An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-873

Filed 15 July 2026

Nash County, No. 21CVD000242-630

YAZMIN S. KASEM, Plaintiff,

v.

SAMIR A. KASEM, Defendant.

Appeal by defendant from order entered 27 February 2025 by Judge William C. Farris in District Court, Nash County. Heard in the Court of Appeals 11 March 2026.

*No brief filed by plaintiff-appellee.*

*Miller & Audino, LLP, by Jay Anthony Audino, for defendant-appellant.*

STROUD, Judge.

Defendant Samir Kasem (Husband) appeals from the trial court's order granting equitable distribution. He contends that some findings of fact were contrary to the parties' stipulations in the pretrial order, while the evidence did not support others.

The parties stipulated that the marital home was marital property and that it would be distributed to Husband. So the trial court erred by distributing the home to Plaintiff Yazmin Kasem (Wife). The court also failed to comply with stipulations on the valuation of a marital debt distributed to Wife and the valuation and distribution of several items of personal property. But the evidence supports the remaining challenged findings—those not at odds with the stipulations. We vacate and remand for entry of a new order consistent with the pretrial order's stipulations.

## I.     Background

Husband and Wife married in the country of Jordan in 1986 and moved to the United States in 2001. In February 2021, in File No. 21-CVD-242, Wife filed a complaint for divorce from bed and board, post-separation support, alimony, and a motion to enjoin conversion of marital assets. In March 2021, Husband filed an answer and counterclaims, denying Wife's substantive allegations and stating his own claim for divorce from bed and board. The parties entered into a consent order on 20 July 2021. That order granted Wife temporary possession of the parties' rental home, specific items of personal property in the marital home, and one vehicle; it granted Husband temporary possession of the marital home, the "remaining items of household property" there, and two vehicles. The parties separated on 12 September 2021.

Husband filed a complaint for absolute divorce and equitable distribution on

14 September 2022 in File No. 22-CVD-1281. On 23 November 2022, Wife filed her answer and counterclaim for equitable distribution. The parties divorced on 21 December 2022.

Discovery ensued. On 22 September 2023, Husband filed a motion to compel Wife "to respond completely to the Request for Production of Documents, dated May 25, 2023." Following an 10 October 2023 hearing on Husband's motion, the court entered an order directing Wife to "file her responses to said discovery requests withing thirty (30) days of the date of this hearing." On 11 October 2023, the trial court consolidated the two pending civil actions (File No. 21-CVD-242 and File No. 22-CVD-1281).

On 29 October 2024, just before trial, the parties signed a "Statement of Property Issues" (pretrial order). The pretrial order stated:

> The parties to this action held an issues conference pursuant to Rule 6 of the Seventh Judicial District Rules for Equitable Distribution cases. Each party stipulates agreement with the facts and issues represented as agreed upon and stipulates that the facts and issues represented as in dispute are accurately reflected and that there are no other disputed issues to be determined by the [c]ourt.

The pretrial order included multiple schedules. They listed: marital property with agreed values and distribution; marital property with disputed values but agreed distributions; property whose classification, value, and (in some instances) existence the parties disputed; "agreed marital debt" with stipulated date-of-separation balances and a designation of which party had paid each debt since separation, but

no agreement on distribution; debt with disputed classification and value; and "parties' contentions re: post separation changes in value." Each party also set out contentions about why an equal distribution would not be equitable.

The equitable distribution hearing was held on 29 and 30 October 2024, and the trial court entered an equitable distribution order on 27 February 2025. Husband timely filed notice of appeal.

## II.    Jurisdiction

This Court has jurisdiction to review Husband's appeal from the trial court's order under North Carolina General Statute Section 7A-27(b). *See* N.C. Gen. Stat. § 7A-27(b)(2) (2025) ("[A]ppeal lies of right directly to the Court of Appeals . . . [f]rom any final judgment of a district court in a civil action.").

## III.    Standard of Review

This Court reviews an equitable distribution order to determine "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Asare v. Asare*, 281 N.C. App. 217, 236, 869 S.E.2d 6, 20 (2022) (citation and quotation marks omitted). "Simply stated, where the trial court's findings of fact are supported by competent evidence, and the findings of fact, in turn, support the trial court's conclusions of law, the decision of the trial court will be affirmed. This Court will not reweigh the evidence." *Pegg v. Jones*, 187 N.C. App. 355, 358, 653 S.E.2d 229, 231 (2007). "Unchallenged findings of fact are binding on appeal." *Peters v. Pennington*,

210 N.C. App. 1, 13, 707 S.E.2d 724, 733 (2011).

"As to the actual distribution ordered by the trial court," our "standard of review is limited to a determination of whether there was a clear abuse of discretion." *Stovall v. Stovall*, 205 N.C. App. 405, 407–08, 698 S.E.2d 680, 683 (2010) (citation and quotation marks omitted). A trial court abuses its discretion and "may be reversed only upon a showing that its actions are manifestly unsupported by reason." *Id.*

## IV.  Analysis

Husband challenges several findings of fact—on the classification, valuation, or distribution of various items of property—as contrary to the parties' stipulations. He also claims that the evidence does not support certain other findings. We start with Husband's argument that the trial court failed to comply with the parties' binding stipulations because, if the order departs from those stipulations, we need not reach his evidentiary challenges to the same findings.

## A. Failure to Follow Stipulations

Husband argues that the "trial court was bound to abide by the stipulations contained in the [p]retrial [o]rder." We agree.

"Under North Carolina General Statute Section 50-20(c), equitable distribution is a three-step process: the trial court must (1) classify property as being marital, divisible, or separate property; (2) calculate the net value of the marital and divisible property; and (3) distribute equitably the marital and divisible property."

*Asare*, 281 N.C. App. at 239, 869 S.E.2d at 22 (citation omitted). The trial court values marital property at the date of separation; it values divisible property and divisible debt at the date of distribution. N.C. Gen. Stat. § 50-21(b) (2025). "Parties may, however, simplify this process by stipulating to an asset's classification, valuation, and distribution":

> A stipulation is a judicial admission that courts recognize and enforce as a substitute for legal proof. And in equitable distribution cases, stipulations in the pretrial order are intended to limit the evidence needed and define the issues the trial court must decide.
>
> Stipulations are binding in every sense. The party who makes a stipulation is prevented from introducing evidence to dispute it, and relieved from the necessity of producing evidence to establish the admitted fact. And a stipulation binding at trial is binding on appeal—parties may not enter into stipulations for trial purposes, then abandon those agreements and chart a different course when they sail into appellate waters.

*MacDonald v. MacDonald*, No. COA24-759, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2026 WL 1236104, at *15 (2026) (citations, quotation marks, brackets, and ellipses omitted). But stipulations may be set aside through direct proceedings, in certain circumstances. *See Smith v. Smith*, 387 N.C. 255, 259, 912 S.E.2d 762, 765 (2025) ("A party to a stipulation who desires to have it set aside should seek to do so by some direct proceeding, and, ordinarily, such relief may or should be sought by a motion to set aside the stipulation in the court in which the action is pending, on notice to the opposite party." (citation and quotation marks omitted)).

Here, nothing in the record or transcript indicates that either party sought to amend or set aside the stipulations, and the trial court did not mention any changes to them. *See id.* Indeed, counsel frequently referred to the pretrial order while questioning witnesses. The stipulations in the pretrial order therefore bound the trial court. Husband's contentions that the trial court failed to follow those binding stipulations all concern finding of fact 41, in which the trial court valued and distributed marital property and marital debt.

### 1. *Marital Home's Distribution*

Husband asserts that the trial court failed to comply with the parties' stipulation on the marital home's distribution. He thus contends that findings of fact 41(c) and 41(c)(1) "are not supported by competent evidence." We agree.

Finding of fact 41(c) states:

> (c) Wife shall receive the following marital property listed on Schedule C having an approximate value of $256,000.00.
>
>> (1) 113 Habersham Court, Rocky Mount, N.C. valued at $256,000.00.

Schedule C of the pretrial order, entitled "Marital Property to be Distributed to Husband but Disagreed Value," listed the marital home. As the title makes clear, the parties stipulated that the property would be distributed to Husband but disagreed on its value: Husband valued it at $256,000; Wife, at $361,000. The court valued the marital home at $256,000 and distributed it to Wife. Because the parties stipulated

that the marital home would be distributed to Husband, the court erred by distributing it to Wife. *See MacDonald*, 2026 WL 1236104, at *15.

We note that the trial court's comments when rendering its ruling suggest that it distributed the home to Wife to balance the total value of the marital property distributed to each party. But the court could not pursue that balance by contravening the parties' stipulation on distribution of a marital asset. *See id.* We remand for the trial court to distribute the marital home to Husband, as the parties stipulated.

### 2. PNC Equity Line's Valuation

Husband argues the trial court failed to comply with the parties' stipulation on the PNC equity line's value. We agree.

In finding 41(l)(2), the court valued the PNC equity line at $13,100 and distributed it to Wife. But Schedule I of the pretrial order—"Agreed Marital Debt"— listed the equity line, and the parties stipulated to a date-of-separation balance of $6,294.77. Because the parties stipulated to that value, the court erred by valuing the PNC equity line at $13,100. *See Macdonald,* 2026 WL 1236104, at *15.

Wife did testify to a higher balance at the hearing. But neither party moved to amend or set aside the stipulation on the equity line's value. *See Smith*, 387 N.C. at 259, 912 S.E.2d at 765. As a result, the trial court was bound by the pretrial order's stipulation. *MacDonald*, 2026 WL 1236104, at *15. We remand for the court to determine responsibility for the PNC equity line as a marital debt valued at

$6,294.77, as the parties stipulated.

### 3. *Classification, Valuation, and Distribution of Items of Personal Property*

Husband argues that the trial court "erred in failing to classify, value, and distribute certain items of personal property" that the parties had stipulated to in the pretrial order and addressed at trial. This argument differs from his challenges to the marital home and the PNC equity line: Husband does *not* assert that the trial court classified, valued, or distributed any item of personal property incorrectly. He contends instead that the court failed to classify, value, and distribute seven items at all. In his words, "there was no competent evidence to support a finding of fact that ignored those seven items." We agree.

Finding of fact 41(e) states:

> (e) Wife shall receive the following marital property listed on Schedule D having an approximate value of $20,675.00.
>
> > (1) 2017 Honda CRV valued at $19,500.00.
> >
> > (2) SECU Savings Account #746 valued at $70.00.
> >
> > (3) Patio Furniture valued at $75.00.
> >
> > (4) Bedroom Set valued at $400.00.
> >
> > (5) Flat Top Freezer valued at $100.00.
> >
> > (6) Wall Frames valued at $200.00.
> >
> > (7) Grill valued at $100.00.
> >
> > (8) Lamps valued at $40.00.

(9) Pots/Kitchen Supplies/Cleaning Supplies valued
at $50.00.

(10) Garage Tools valued at $50.00.

(11) Garden Hose valued at $5.00.

(12) Birdcage Patio Chair valued at $50.00.

(13) TV Table Mount valued at $20.00.

(14) Bed Sheets and Comforter valued at $15.00.

The fourteen items in finding 41(e) were contained in Schedule D of the pretrial order, entitled "Marital Property to be Distributed to Wife but Disagreed Value." But Schedule D listed twenty-one items. Husband valued every one; Wife listed no values for the lamps,[1] flatware, bathroom set, garage tools, and garden hose. In finding 41(e), however, the court valued and distributed only fourteen of the twenty-one items. Husband is correct that the trial court failed to value seven items and to distribute them to Wife.

Schedule D listed seven items that finding 41(e) omitted: a living room set, seven dinner plates, six coffee cups, flatware, a bathroom set, a TV from the master bedroom, and table decorations. As noted above, Wife assigned no value to the flatware or the bathroom set. But at the hearing, she testified to the value of each omitted item—including the flatware ("$10") and the bathroom set ("not even . . . $5").

---

[1] Lamps appear on both Schedules A and D. The parties agreed to distribute the "living room lamps," valued at $50, on Schedule A to Husband at that value. The "lamps" on Schedule D were to be distributed to Wife, but the parties disagreed on their value; Husband alleged a $50.00 value.

The value of items is *de minimis*. But because we must already remand for a new order, given the erroneous distribution of the marital home and valuation of the PNC equity line, we also remand for the trial court to value the seven omitted Schedule D items and distribute them to Wife.

## B. Findings of Fact

Husband challenges several other findings of fact as unsupported by the evidence.

### 1. *Wife's Credit Cards*

Husband contends that the "trial court abused its discretion in its valuation and distribution of [Wife]'s credit card debt, when [Wife] presented absolutely no credible evidence regarding the amount of that debt." Finding of fact 41(m) states:

> m. Wife shall be distributed marital debt listed on Schedule
> K totaling approximately $8,350.00.
>
> (1) Wife's Credit Cards Balance totaling $8,350.00.

Wife testified that she had and used two credit cards during the marriage mostly to buy groceries, household needs, and gas. Her testimony supports the trial court's finding on both the debt's amount and its marital purpose. *See Asare*, 281 N.C. App. at 236, 869 S.E.2d at 20.

According to Husband, Wife's testimony was not credible because she presented no credit card statements as evidence. Husband also notes that Wife failed to provide these statements, along with other financial information, throughout the equitable distribution case. Specifically, he points to the trial court's October 2023

order allowing his motion to compel discovery from Wife, which required her to serve discovery responses within thirty days. But Husband did not raise any argument or issue before the trial court about Wife's alleged failure to comply with the discovery order, so that argument is waived. *See Brown v. Brown*, 290 N.C. App. 254, 261, 892 S.E.2d 206, 211 (2023) (noting the well-established principle that when a party raises an issue on appeal that it did not raise before the trial court, "the argument is not properly preserved and is waived on appeal" (citation and quotation marks omitted)); s*ee also Bennett v. Hospice & Palliative Care Ctr. of Alamance Caswell*, 246 N.C. App. 191, 195 n.1, 783 S.E.2d 260, 263 n.1 (2016) ("[I]ssues or theories of a case not raised at the trial level will not be entertained for the first time on appeal.").

The record and transcript show that both parties handled their own financial matters during the marriage without sharing information with each other. And during discovery, neither party readily disclosed financial information. In finding of fact 14, the court found that "Wife presented evidence that throughout the marriage, . . . Husband controlled the finances and that her role was limited to being a homemaker tending to the needs of the home and the children and being employed outside the home during some periods." The court also found—in finding 15—that "Husband presented evidence that throughout the marriage Husband and Wife kept their finances separate with each party maintaining their own individual financial accounts." The trial court considered all this evidence and assessed credibility accordingly. *See Watson v. Watson*, 261 N.C. App. 94, 101, 819 S.E.2d 595, 601 (2018)

("The trial court determines the credibility and weight of the evidence." (citation omitted)); *see also Sneed v. Johnston*, 293 N.C. App. 650, 656, 902 S.E.2d 28, 34 (2024) ("The fact finder has a right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it." (citation and quotation marks omitted)).

We hold that the evidence supported the trial court's findings of fact 41(m) and 41(m)(1) as to valuation of Wife's credit card debt and its classification of the debt as marital. *See Asare*, 281 N.C. App. at 236, 869 S.E.2d at 20.

### 2. *Jordanian Real Property*

Husband argues the trial court "abused its discretion in its valuation and distribution of two Jordanian properties[, Aljubiaha House and Al Shora Farm,] when absolutely no credible evidence was presented regarding their values." Finding of fact 41(i) states:

> (i) Husband shall receive the following marital property listed on Schedule G having an approximate value of $235,000.00.
>
> > (1) Aljubiaha House valued at $135,000
> >
> > (2) Al Shora Farm[2] valued at $100,000.00

Schedule G of the pretrial order, entitled "Disagree on Whether Item Is Marital Property," lists sixteen items of real and personal property. Wife listed values for all

---

[2] In the transcript, this is called the "Al Surah farm." We use the spelling used in the pretrial order and order.

but three of the items, while Husband alleged "DNE" or "does not exist" for all but two.[3] Six of the items were real properties in Jordan—including the Aljubiaha House and Al Shora Farm—and four were bank accounts: "Arab Jordanian Bank xxx480," valued at $110,000; "Cairo Amman Bank xxx208," valued at $126,000; "Housing Bank xxx235," valued at $225,000; and "British Bank," valued at "TBD." The trial court could not classify or value most of the alleged Jordanian property for lack of evidence.

Husband's argument again mainly attacks the credibility and weight of the evidence on the two Jordanian properties the trial court did classify, value, and distribute. But the court's other findings make plain the reasons for its valuation and credibility determinations:

> 27. Husband filed pretrial documents in which he denied knowledge of marital property owned by the parties in the Hashemite Kingdom of Jordan.
>
> 28. With regard to marital assets located in the Hashemite Kingdom of Jordan, Husband filed with the [c]ourt claims that such assets "do not exist" and that he has "no knowledge of this."
>
> 29. After Wife presented evidence of Husband's ownership of marital real properties in the Hashemite Kingdom of Jordan in [c]ourt, Husband admitted ownership of three (3) real properties in Jordan which Wife listed in her Exhibit 10 and/or her Seventh Judicial District Equitable Distribution Affidavit.
>
> 30. Husband testified one of the real properties located in

---

[3] He acknowledged the existence of a "bedroom rug" valued at $500 and a "vacuum" valued at $200.

the Hashemite Kingdom of Jordan was a gift from his Father and not marital property. He further testified one real property was a marital house and one real property was the Al Shora Farm which was also marital real property.

31. Husband presented, by way of evidence, no deeds or tax records and gave no opinion as to the value of the marital real properties located in the Hashemite Kingdom of Jordan except for his opinion that he believed the Al Shora Farm was worth $40,000.00.

32. Wife lived in the marital house located in the Hashemite Kingdom of Jordan for some period of time and saw videos of the Al Shora Farm.

. . . .

34. Although Wife estimated Husband has marital assets located in the Hashemite Kingdom of Jordan, including but not limited to, the real properties referenced above that are valued over $1.5 million dollars, the [c]ourt cannot determine the exact extent and value of Husband's marital assets, and does find Wife's opinion that the two (2) properties Husband admits to owning consisting of the marital house and farm, are worth $235,000.00.

The evidence supports the trial court's findings on the two Jordanian properties, and the court did not abuse its discretion in valuing or distributing them. *See Asare*, 281 N.C. App. at 236, 869 S.E.2d at 20; *see also Stovall*, 205 N.C. App. at 407–08, 698 S.E.2d at 683. The trial court considered Husband's pretrial assertions—made under oath in his sworn Equitable Distribution Affidavit—that he had no interest in any real property in Jordan. But when confronted with documentary evidence from Jordan about some of the properties, Husband admitted that three

existed.

Husband maintains that Wife knew too little about the properties to offer competent evidence of their values. But the parties lived in Jordan for the first fifteen years of their marriage. Wife had also lived in the Aljubiaha House, had seen video of the farm, and knew generally about Jordan and about Husband's purchase of the farm. And Husband's own testimony mostly confirmed her account of the farm. Wife testified that Husband bought the Al Shora Farm in 1996. It had a building and land, and "back home," she explained, "they call [it] a farm because it's places that you go out for the weekend, you barbeque with the family, spend some time there. . . . I tried to translate it as close as I could." Once Husband was forced to admit the existence of the Al Shora Farm, he testified that he and his brother bought it around 2014 for about $40,000. He stated that it was a "little farmhouse" located "down . . . by the Dead Sea," good to visit in the winter but "way too hot" in the summer. Yet on cross examination, he again denied owning the Al Shora Farm listed on Schedule G. The fact finder, of course, "has a right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it." *Johnston*, 293 N.C. App. at 656, 902 S.E.2d at 34 (citation and quotation marks omitted).

Competent evidence thus supports finding of fact 41(i), and the trial court did not abuse its discretion in valuing and distributing the Aljubiaha House and the Al Shora Farm. *See Asare*, 281 N.C. App. at 236, 869 S.E.2d at 20; *see also Stovall*, 205

N.C. App. at 407–08, 698 S.E.2d at 683.

## V. Conclusion

Because the trial court's distribution of the marital home and its valuation of the PNC equity line contravened the parties' stipulations in the pretrial order, we vacate and remand for entry of a new order. The court also failed to value and distribute seven items of personal property covered by those stipulations. On remand, the trial court shall classify, value, and distribute the items addressed in this opinion in accord with the pretrial order's stipulations. Based on those new findings, the court shall also make new findings on the net value of the marital estate and distributive award, as it determines appropriate.

Findings on classification, value, or distribution not challenged in this appeal cannot be modified on remand. Because Husband did not challenge the trial court's conclusion that an equal division is equitable, the court shall not revisit any contentions supporting an unequal distribution. And because the court valued the marital properties at the date of separation and neither party contended that any divisible property existed, no new hearing is required. In its discretion, the trial court may enter a new order based on the existing record or may first hold a hearing limited to issues identified in this opinion.

VACATED AND REMANDED.

Judges ARROWOOD and WOOD concur.

Report per Rule 30(e).